UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY SMITH,<br><br>                    Plaintiff,<br><br>         v.<br><br>CDCR EDUCATION DEPARTMENT, et. al. ,<br><br>                    Defendant. | Case No.  1:20-cv-716-NONE-HBK(PC)<br><br>FINDINGS AND RECOMMENATIONS TO GRANT DEFENDANT'S MOTION TO DISMISS AND DISMISS THE COMPLAINT WITH LEAVE TO AMEND[1]<br><br>(Doc. No.  19)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court is Defendant CDCR Education Department's motion to dismiss. (Doc. No. 19). Defendant attaches exhibits to the motion to dismiss, requesting that the Court take judicial notice of the exhibits. (Doc. No. 19-1). After Plaintiff failed to file an opposition to the motion within fourteen days under Eastern District Local Rule 230 (c), the Court *sua sponte* granted Plaintiff an extension of time to file response or notice of non-opposition to the motion by a set date. (Doc. No. 23). Plaintiff did not file a timely response to the Motion.[2] For the reasons

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Ca. 2019).

[2] Defendant also filed amotion to dismiss for failure to prosecute after Plaintiff failed to file a response or notice of non-opposition. (Doc. No. 25). Thereafter, Plaintiff filed a belated motion to accept late filing. (Doc. No. 27). The belated motion did not indicate whether the belated filing was in response to Defendant's first filed motion to dismiss or Defendant's second filed motion to dismiss for failure to prosecute. The belated motion, although referencing habeas case law on equitable tolling explained Plaintiff was unable to timely respond because he requires the use of a prison law clerk and his ability to

set forth below, the undersigned recommends the Court grant Defendant's motion to dismiss and dismiss the Complaint but permit Plaintiff an opportunity to file an Amended Complaint.

## I. BACKGROUND

Gary Smith, a state prisoner, initiated this action by filing *pro se* civil rights complaint under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). (Doc. No. 1, "Complaint"). The Complaint, which was not on the Court's suggested complaint form, identified "Mr. Espinosa and CDCR Educational Dept. *et. al*" in both their individual and official capacities as defendants. (*Id*. at 1). The former-assigned magistrate judge issued a screening order under 28 U.S.C. § 1915A and determined the Complaint stated an ADA and RA claim against the California Department of Corrections ("CDCR") but no other claims. (Doc. No. 7). The Court directed Plaintiff to advise whether he was willing to voluntarily dismiss "Mr. Espinosa et. al" so the action could proceed against CDCR's Education Department only. (*Id*. at 2). Plaintiff filed a notice of voluntary dismissal, recognizing the dismissal of "Defendant Espinosa *et. al*," so his claims could proceed against CDCR alone.[3] (*See* Doc. No. 8 at 2). In response to the Complaint, Defendant CDCR filed the instant motion to dismiss. (Doc. No. 19).

### A. The Complaint and Attachments

The following facts are alleged in the Complaint and presumed true at this stage of the proceedings. Plaintiff self-identifies as having "a learning disability." (Doc. No. 1 at 1). Plaintiff acknowledges he does not have a "verified" learning disability. (*Id.*). Plaintiff requested help for education programs because he is "unable to read or write properly due to [his] learning disability." (*Id*. at 3). Although CDCR provides inmates without verified learning disabilities

---

meet with the law clerk was impacted due to Covid-19. The Court liberally construes the belated motion as in response to Defendant's motion to dismiss for failure to prosecute and will separately issue an order regarding Plaintiff's motion to accept the belated filing and Defendant's motion to dismiss for failure to prosecute.

[3] Following the former-assigned magistrate judge's screening order, Plaintiff filed a notice of voluntary dismissal of Defendant Espinosa. (*See* Doc. No. 8). Two defendants, CDCR and Espinosa appear terminated on the docket, however. (*See* docket). Considering CDCR Education Department is not *sui juris* and counsel has entered an appearance on behalf of CDCR, the Court will await the filing of Plaintiff's Amended Complaint before directing the Clerk to correct the caption of the case. (*See* Doc. No. 19 at 1) (stating "Defendant California Department of Corrections and Rehabilitation moves to dismiss . . .").

assistance, Plaintiff was given RVR punishment. (*Id.* at 3).  Plaintiff also did not receive "what Armstrong Remedial Program offers for low cognitive [and/or] learning disorder[ed] inmates". (*Id.*)  CDCR has no testing for learning disabled inmates and no Peer Literacy Mentorship Program (PLMP) to assist inmates with learning disabilities.  (*Id.*)  Due to CDCR's failure to provide these services to Plaintiff, he is unable to reach his education goals and is ineligible for credits, such as the "Milestone Completion Credits," "Rehabilitative Achievement Credit," and "Educational Merit Credit" which advance inmates' initial parole or release dates. (*Id.* at 4).  As relief, Plaintiff seeks $250,000 in monetary damages.  (*Id.*).

Attached to the Complaint is Plaintiff's Reasonable Accommodation Request (CDCR 1824) dated August 2, 2019, in which Plaintiff claims he is unable to take a test or do schoolwork without extra help from a teacher or a tutor; he took a CASAS test on July 30, 2019 without any Armstrong Remedial Plan accommodations from his teacher Espinoza; and he needs to retake his CASAS test but requires help.  (Doc. No. 1 at 16).  Also attached is the Reasonable Accommodation Panel (RAP) Response which states that CDCR's Education Department provided the RAP with a Disability Verification Process (DVP) Worksheet indicating that a 128B "Unverified Learning Disability Chrono" was generated based on Plaintiff's allegation of a learning disability, but no records substantiate Plaintiff's claims. (*Id.* at p. 17).  The RAP Response further states that formally administered exams, such as CASAS, require documentation for disabilities to facilitate testing accommodations and, until the CDCR Education Department receives supporting documentation validating Plaintiff's learning disability, Plaintiff is not entitled to extra testing assistance on formally administered exams such as CASAS.  (*Id.*).  Plaintiff also attaches form CDC 128B, which states that Plaintiff has not provided documentation/substantiation to support his claim of a learning disability.  (*Id.* at 18). This CDC 128B also provides that, despite the Education Office's request for a copy of Plaintiff's special education records from Beyer High School and despite its search of appropriate source documents, no records were available to verify that Plaintiff has a learning disability.  (*Id.*). Finally, the Second Level Response attached to Plaintiff's Complaint provides that "[e]ducation records show you have scored as high as 216 on the Comprehensive Adult Student Assessment

System (CASAS) test, and as high as 2.7 grade point level on the Test of Adult Basic Education (TABE).  These scores show you are capable of learning." (*Id*. at 15.).

### B. Defendant CDCR's Motion to Dismiss[4]

Defendant argues the Complaint fails to state an ADA or an RA claim because the Complaint does not allege the four requisite elements—mainly that Plaintiff is a "qualified individual with a disability." (Doc. No. 19 at 5-6).  Defendant points out that in his Complaint, Plaintiff "self-identified as an individual who has 'a' learning disability" and states he cannot read or write "properly due to 'a' learning disability." (*Id*. at 6).  Defendant argues these facts fall short of stating specific facts sufficient to allege Plaintiff has a specific, qualifying disability. (*Id*. at 7).

Additionally, Defendant argues the Complaint fails to sufficiently allege what service, program, or activity Plaintiff was otherwise qualified to participate in, but was excluded from or denied benefit of "by reason of" his disability.  (*Id.*).  To the extent Plaintiff alleges he was denied the benefit of being tested for a learning disability, or the benefit of a Peer Literacy Mentorship Program, Defendant points out Plaintiff's own allegations recognize that no such testing or program is available to *any* other inmate at CDCR.  (*Id.* at 7-8).  Further, Defendant argues that the attachments to Plaintiff's Complaint reveal Plaintiff did not receive additional help or testing accommodations on CASAS because he was not regarded as having a disability and thus as not entitled to any accommodations.  (*Id.* at 8).  Finally, Defendant argues the Complaint seeks only monetary damages, but the Complaint does not allege Defendant intentionally discriminated against Plaintiff.  (*Id.* at 9-10).

///

---

[4] Attached to Defendant's motion to dismiss are exhibits consisting of the *Armstrong* remedial plan orders set forth in case number 4:94-cv-02307-CW (N.D. Cal.) issued on January 1, 2001, and December 1, 2010, respectively.  (Doc. No. 19-1).  Defendant requests the Court take judicial notice of these orders under Fed. R. Evid. 201(d).  (*Id.* at 1-2).  Indeed, Fed. R. Evid. 201(d) permits courts to take judicial notice of facts not subject to reasonable dispute that are either generally known or capable of accurate and ready determination by report to sources whose accuracy cannot reasonably be questioned.  Although Plaintiff's Complaint refers to *Armstrong*, the Court does not find it necessary to consider the remedial plan for purposes of considering whether the Complaint plausibly states a claim under Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While *pro se* complaints are held to "less stringent standards," than those drafted and filed by attorneys, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Federal Rules of Civil Procedure 8 and 10 still apply to pro se actions. A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

At this stage of the proceedings, the Court accepts the facts stated in the Complaint as true. *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740 (1976). The Court does not accept as true allegations that are merely conclusory or are based on unreasonable inferences or unwarranted deductions. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Nor do legal conclusions qualify as facts. *Iqbal*, 556 U.S. at 678. Because plaintiff is *pro se*, the Court liberally construes the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). Further, a Court's finding that a complaint states a cognizable claim at screening under 28 U.S.C. § 1915A does not preclude the court from dismissing the complaint later for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Easley v. Pinnell*, 182 F.3d 924, n. 3 (9th Cir. 1999) (discussing in a footnote that the court's determination the complaint stated non-frivolous claims under § 1915A at screening did not preclude subsequent dismissal for failure to state a claim); *Coleman v. Maldnado*, 564 F. App'x 893, 894 (9th Cir. 2014) (a district court may still properly grant a motion to dismiss despite a prior screening order finding the complaint stated a claim).

In ruling on a motion to dismiss, the Court may consider only the complaint, any exhibits

thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

If a Complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted). However, the Court need not permit amendment if it would be futile. *Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile.).

### III. APPLICABLE LAW AND ANALYSIS

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted). "The term 'services, programs, or activities' as used in the ADA is . . . broad, 'bringing within its scope anything a public entity does.'" *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014) (quoting *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002)). Title II applies to the services, programs, and activities provided for inmates by jails and prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-13, 118 S.Ct. 1952 (1998); *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021-22 (9th Cir. 2010); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1214-15 (9th Cir. 2008).

Specifically, to state a claim under Title II of the ADA, Plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either

6

> excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original).

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. *See Id.* (citing 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). Additionally, a state official sued in his or her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. *See Georgia*, 546 U.S at 154; *Duffy*, 98 F.3d at 452; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To recover monetary damages under the ADA, a plaintiff must show that the exclusion or discrimination was intentional. *Duvall v. Cnty Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Similarly, to state a claim under the RA, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to receive a benefit; (3) he was denied the benefits of a program solely by reason of his disability; (4) the program receives federal financial assistance.

*O'Guinn v. Lovelock Corr. Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citations omitted).

A "qualified individual with a disability" is a person who, "with or without modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Title 28, section 35.108 of the Code of Federal Regulations, subsection (a) defines "disability" as:

> (i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (ii) a record of such impairment; or

7

>> (iii)  Being regarded as having such an impairment as described in paragraph (f) of this section.[5]

Regarding the definition of "physical or mental impairment":

>> (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>>
>> (ii)  Any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and *specific* learning disability.

28 C.F.R. 35.108(b) (emphasis added).  The same definitions apply in RA cases.  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

### A. The Complaint Fails to Allege a Qualified Disability

Defendant CDCR argues the Complaint fails to state a claim because Plaintiff has failed to allege sufficient facts to plead a qualified disability.  (Doc. No. 19 at 6-7).  Defendant points to the fact that Plaintiff's learning disability has not been "verified" and he has not alleged a "specific" learning disability.  (*Id*. at 6-7).  While recognizing the Complaint alleges Plaintiff cannot read or write, Defendant argues that Plaintiff has not shown his "learning disability" "substantially" limits his major life activities.  (*Id*.).

Defendant cites *Mau v. Ducart*, No. 17-cv-02548-CRB-(PR), 2019 WL 1317453, at *3-4 (N.D. Cal. Mar. 22, 2019) to support its argument that the learning disability must be verified.  Unlike the instant case, *Mau* was at the summary judgment stage of the proceedings, not the motion to dismiss stage of the proceedings, so the court was looking for evidence in the record that demonstrated the plaintiff had a learning disability.  *See Mau*, 2019 WL 1317453, at *3-4.

---

[5] As referred to above, subsection (f), pertaining to "regarded as having such an impairment" provides:

>> (1) Except as set forth in paragraph (f)(2) of this section, an individual is "regarded as having such an impairment" if the individual is subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not that impairment substantially limits, or is perceived to substantially limit a major life activity, even if the public entity asserts, or may or does ultimately establish, a defense to the action prohibited by the ADA.

8

1 Indeed, the Court determined the plaintiff in *Mau* neither provided sufficient evidence to
2 demonstrate that he had ever been diagnosed with a learning disability, nor that he had been
3 excluded from an educational program by reason of his disability. *Id.*
4     Nevertheless, the Court agrees with Defendant. Here, the Complaint does not include any
5 facts alleging that Plaintiff in fact has a *specific* disability. (*See generally* Doc. No. 1). Instead,
6 Plaintiff alleges in the Complaint that he cannot read or write. (*Id.* at 3). Additionally, although
7 documentation attached to the Complaint alleges Plaintiff took a Test of Adult Basic Education
8 (TABE), which resulted in a "reading level below 4.0," *id.* at 14, illiteracy alone does not
9 constitute a disability. *Johnson v. Scott*, Case No. 21-2543-AB(E), 2021 WL 1664175, at*4
10 (C.D. Cal. April 28, 2021) (citing *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996)
11 ("While illiteracy is a serious problem, it does not always follow that someone who is illiterate is
12 necessarily suffering from a physical or mental impairment) (citation omitted); *Adams v.*
13 *Crestwood Medical Center*, 2020 WL 7049856, at *14 (N.D. Ala. Dec. 1, 2020) (rejecting claim
14 that plaintiff's literacy itself was a disability; *see* "Appendix to Part 1630-Interpretative Guidance
15 On Title I of the Americans with Disability's Act," 29 C.F.R. § Pt. 1630, App. "Section 1630.2(h)
16 Physical or Mental Impairment" (environmental, cultural, or economic disadvantages such as
17 poverty, lack of education, or a prisoner record are not impartments).
18     As set forth above, the statutory language in 28 C.F.R. 35.108(b) defines a physical or
19 mental impairment as a "*specific* learning disability." Based on the foregoing, the Court finds the
20 Complaint does not contain sufficient facts alleging Plaintiff has a qualifying disability under the
21 ADA and the RA. However, considering Plaintiff has not had an opportunity to file an Amended
22 Complaint, the undersigned recommends that Plaintiff be afforded the opportunity to file an
23 Amended Complaint if he wishes to proceed in this action and can allege necessary facts of a
24 specific learning disability.
25     **B. No Allegation of Exclusion from Service/Program**
26     Next, Defendant CDCR argues the Complaint fails to state an ADA or an RA claim
27 because the Complaint does not allege sufficient facts that Plaintiff was excluded from a program
28 or service "by reason of his disability." (Doc. No. 19 at 7-8). Simply put, Defendant submits

9

1 because Plaintiff does not allege a qualifying disability, he cannot allege he was denied benefits
2 of any programs or services. (*Id.* at 8).  To the extent Plaintiff challenges that he was not
3 provided extra help in the educational programs or testing accommodations, Defendant argues
4 that like the Plaintiff in *Mau*, Plaintiff was not provided this extra help because as evidenced by
5 the attachments to the Complaint, Plaintiff was not regarded as having a disability. (*Id.*).

6       The Court agrees with Defendant.  Reviewing the Complaint and exhibits attached
7 thereto, Plaintiff claims that his ability to participate in CDCR's educational programs, some of
8 which effect parole eligibility, is impeded due to his inability to read and write. (Doc. No. 1 at 1-
9 3).  Additionally, Plaintiff alleges he cannot obtain a G.E.D. due to his illiteracy. (*Id.*).  Plaintiff
10 states that other prisoners participate in these programs. (*Id.*).

11       Undoubtedly, CDCR's educational programs benefit Plaintiff and other inmates who
12 choose to participate. *See Yeskey*, 524 U.S. at 210 (discussing the sort of benefits modern
13 correctional institutions provide inmates).  Plaintiff, however, cannot allege that he is being
14 excluded from the educational programs *as a result of* a specific learning disability.  This is
15 because neither the Complaint, nor the exhibits attached thereto, allege Plaintiff has a learning
16 disability.  The exhibits show Plaintiff requested testing accommodations for CASAS but was
17 denied them because he has no verified learning disability. (Doc. No. 1 at 17).  The facts gleaned
18 from the attachments to the Complaint reveal that it's the lack of a specific disability that is the
19 reason Plaintiff isn't receiving the accommodation he believes he needs based on his illiteracy.
20 *See Weinreich v. City of Loss Angeles Cty. Metro Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir.
21 1997) (holding that plaintiff's exclusion from reduced fair program for disabled users of public
22 transportation was due to his inability to pay for updated certification of disability, not due to fact
23 or perception of his disability).  There are no facts in the Complaint alleging that Plaintiff cannot
24 improve his reading and writing level as a result of his self-identified disability.  Accordingly, the
25 undersigned finds Defendant's Motion should be granted because the Complaint does not include
26 facts alleging Plaintiff was excluded from the CDCR educational programs as a result of his
27 disability.
28

### C. No Intentional Discrimination Alleged to Recover Monetary Damages

Finally, Defendant argues Plaintiff cannot seek monetary damages absent intentional discrimination and no such facts are alleged in the Complaint. (Doc. No. 19 at 9-10). The Court agrees with Defendant. The Complaint does not seek any injunctive relief and seeks only monetary damages in the amount of $250,000. (*See* Doc. No. 1 at 2). Absent intentional discrimination, a plaintiff cannot recover monetary damages. *Supra* at 5; *see also Johnson*, 2021 WL, at *5 (citing *Updike v. Multnomah County*, 870 F.3d 939, 950 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 55 (2018)). To show intentional discrimination, a plaintiff must show that a defendant acted with "deliberate indifference," which requires "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* (citing *Updike*, 870 F.3d at 950-51) (other citations omitted). Because the Complaint does not allege such facts, the relief Plaintiff seeks is unavailable. However, absent intentional discrimination, a plaintiff may still seek declaratory or injunctive relief under the ADA or RA for a violation.

### D. Plaintiff Should be Afforded an Opportunity to File an Amended Complaint

Plaintiff is proceeding on his initial Complaint and has not had an opportunity to file an Amended Complaint. (*See* docket). As set forth above, Federal Rule of Civil Procedure 15 provides that a court should freely give leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). "[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). "[T]he 'rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the *pro se* litigant is far more prone to make errors in pleadings than the person who benefits from the representation of counsel.'" *Lopez*, 203 F.3d at 1131 (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)). To afford a *pro se* litigant the best chance to address errors, the court must provide "notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). Thus, the Court should permit Plaintiff thirty days to file an Amended Complaint, so

he has an opportunity to correct the pleading deficiencies with sufficient facts to the extent possible. Absent Plaintiff's timely filing an Amended Complaint, the Court should dismiss this action without further notice.

Accordingly, it is **RECOMMENDED**:

Defendant's motion to dismiss be **GRANTED** and the Complaint be dismissed for failure to state a claim and Plaintiff be granted thirty (30) days to file an Amended Complaint from the date of receipt of the order approving the Findings and Recommendation.

## NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:  August 23, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE